**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SHANIQUE BEST**, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**BANK OF AMERICA**, **N.A.**,<br><br>*Defendant*. | CIVIL ACTION NO.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff SHANIQUE BEST ("Best"), on behalf of herself and all others similarly situated, brings this class action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, along with certain state law claims, against Defendant BANK OF AMERICA, N.A. ("BANA"), a bank corporation that furnishes information to various consumer reporting agencies ("CRA"). Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA") and other state laws.

### II. JURISDICTION *and* VENUE

2. The Court has federal question jurisdiction pursuant to the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant can be found in this District and regularly sells its products and services in this District.

### III. PARTIES

4. Plaintiff Shanique Best ("Best") is a resident of Brooklyn, New York and is a "consumer" as defined by FCRA § 1681a(c).

5. Defendant Bank of America, N.A. ("BANA"), is a bank corporation that regularly conducts business in New York with its corporate headquarters located at 100 North Tryon Street, Charlotte, North Carolina 28255. BANA regularly and in the ordinary course of business furnishes information to various consumer reporting agencies regarding BANA's transactions with consumers, and is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b).

### IV. FACTUAL ALLEGATIONS

*Defendant's Practices of Reporting to Consumer Reporting Agencies*

6. In an effort to combat against consumers who engage in account fraud, most banks, including Defendant, rely on CRAs, such as Early Warning System ("EWS") and ChexSystems, Inc. These CRAs make it possible for banks to exchange information about consumers who allegedly previously engaged in account fraud. In the event a financial institution concludes that a particular consumer engaged in account fraud, it will furnish a fraud warning about the consumer to one or more of the CRAs. In turn, the CRAs sell the fraud warning to other banks. Banks rely on the fraud warnings to gauge a potential customer's risk, and use the information to determine whether it will allow a potential customer to open a bank account.

7. An inaccurate fraud warning is devastating for consumers. If a CRA report contains a fraud warning, the consumer is effectively blackballed by the entire financial community. Most banks will deny the consumer the ability to open a new bank account, existing bank accounts are usually swiftly closed, and the injured consumer is left with no ability to conduct banking business.

8. As will be demonstrated herein, Defendant willfully injures consumers, here the members of the class, by failing to have adequate procedures in place, resulting in inaccurate reporting, account closures and retention of deposit money that consumers are entitled to, yet deprived of through no fault of their own.

9. This is not the first time BANA has been accused of willfully violating the rights of consumers. In fact, Defendant is notorious for mistreating and stealing from its customers, and it has a long history of ignoring state and federal laws and systematically engaging in unfair and unlawful business practices. In the last decade alone, BANA has been fined by the government 251 times, with a whopping $82.9 billion in racked up fines, more than any other bank in history.[1]

10. In addition, the internet is awash with consumers complaining that Defendant unfairly closed their account and furnished inaccurate Account Abuse information to the CRA's. One consumer states: "BANA closed my account because suspicious activity, I found out that I was hacked and scammed but they don't care. Now I cannot open any account in other places, like banks, even I tried a credit union." https://www.consumeraffairs.com/finance/chex_complaints.html?page=2;

11. When BANA determines, according to its standardized internal procedures, that an individual account holder has engaged in account fraud, it closes the account, prevents payment on it and furnishes a fraud activity warming report to the CRAs, including to ChexSystems and EWS.

12. However, BANA routinely and as a matter of standardized practice erroneously flags many legitimate transactions as fraudulent when they are not, including but not limited to when a BANA account holder attempts to deposit an endorsed check from a spouse or family

---

[1] *See, e.g.,* https://thefintechtimes.com/bank-of-america-has-accumulated-82-9-billion-in-fines-since-2000-brokerchooser-study-finds/.

member into their account. BANA compounds the problem by failing to conduct a reasonable investigation prior to furnishing fraud warnings to the CRAs, and failing to conduct reasonable reinvestigations of consumer disputes regarding erroneously flagged fraud warnings after consumers dispute such them despite being required to do so by the FCRA.

13. As a result of this failure to conduct a reasonable investigation, BANA will falsely report to the CRAs (and thus, to the banks and creditors holding the consumer's other financial accounts) that the consumer has engaged in account fraud.

14. Defendant negligently and willfully violates the FCRA by failing to comply with the requirements it places upon furnishers of such information to investigate disputes from consumers who assert that the fraud warnings are erroneous. Defendant's practice not only violates the FCRA as a matter of law, it exacts serious consequences on consumers and interstate commerce.

15. Defendant also breaches its contracts with consumers when it closes their accounts, fails to reopen their accounts and neither processes nor returns the erroneously flagged checks after receiving disputes from consumers and failing to confirm or investigate them. Thus, consumers are not only defamed, they are denied essential banking services and denied monies to which they are owed and entitled.

*The Facts Pertaining to Class Representative Plaintiff Shanique Best*

16. In February of 2022, Plaintiff discovered that BANA was furnishing to at least one of the nation's CRAs, ChexSystems, that she had engaged in fraudulent activity relating to the depositing of a check into her BANA account by her husband Daniel Hylton (the "erroneous BANA account"). Plaintiff had held a BANA account in good standing, and had never engaged in any type of fraud. The check was from Mr. Hylton's union Mason Tenders D.C. Welfare Fund

Vacation Account, payable to him and which he endorsed to her for deposit into her BANA account. There was nothing fraudulent about the transaction.

17. Plaintiff disputed the fraudulent reporting with both ChexSystems and BANA directly in March of 2022 by way of a detailed letter sent certified mail, return-receipt-requested directly to both entities explaining the error. Plaintiff's dispute included numerous supporting documentation including a copy of the ChexSystems Report, a check stub, a copy of the check in question, a copy of her marriage certification with Mr. Hylton, and a letter from Mr. Hylton's employer verifying the check's validity.

18. Pursuant to its duties under the FCRA, ChexSystems forwarded Plaintiff's dispute to BANA, and BANA received it. As such, BANA had two separate disputes from Plaintiff regarding the erroneous fraudulent account.

19. Pursuant to its usual procedures, BANA never conducted any reasonable reinvestigation of Plaintiff's disputes, never contacted her or her husband to follow up on the circumstances related to the erroneously reported check, never reviewed her detailed correspondence and extensive documentation supporting her disputes, and never contacted her husband's union to verify to validity of the check and/or his endorsement to her.

20. Instead, on April 26, 2022, BANA sent Plaintiff a letter documenting that it had received her dispute "to adjust information reported to the consumer reporting agency" but that "[its] review determined that [it] accurately reported [her] account to the consumer reporting agencies" and that "The account information is being accurately reported to [her] file." Plaintiff received the letter a couple of days after it was sent.

21. Plaintiff requested her file from ChexSystems in November of 2023. On November 13, 2023, ChexSystems sent her a file which documented that it was still reporting the erroneous

5

BANA fraudulent check. The November 13, 2023 ChexSystems report also documented that ChexSystems had reported the erroneous BANA information to numerous entities since the BANA dispute response including Factor Trust and Progressive Finance, LLC on December 20, 2022 and Trans Union and Mission Lane on July 11, 2023.

22. Plaintiff again disputed the erroneous BANA account with both ChexSystems and BANA directly in January of 2024 by way of a detailed letter sent certified mail, return-receipt-requested directly to both entities explaining the error. Plaintiff's dispute included numerous supporting documents including a copy of the ChexSystems Report, a copy of the check in question, a copy of her marriage certification with Mr. Hylton, a letter from Mr. Hylton's employer verifying the check's validity, and also an Affidavit of Daniel Hylton.

23. In response to her ChexSystems dispute, upon information and belief, ChexSystems relayed her dispute to BANA and BANA received the January 2024 dispute.

24. Notwithstanding Plaintiff's January 2024 disputes, and again pursuant to its usual procedures, BANA never conducted any reasonable reinvestigation of Plaintiff's disputes, never contacted her or husband to follow up on the circumstances related to the erroneously reported check, never reviewed her detailed correspondence and extensive documentation supporting her disputes, and never contacted her husband's union or her husband to verify to validity of the check and/or his endorsement to her.

25. On January 14, 2024, ChexSystems sent Plaintiff a letter which it characterized as a response to her January 2024 dispute. The letter asserted, among other things, that:

- "[Plaintiff's] dispute [was] considered frivolous or irrelevant.";
- "The Closure status Date and Date of Closure has been changed to 01/30/2020."
- "With the above change *the source has verified the information they submitted to be accurate and complete. As a result, it will remain on file at ChexSystems.*"
  (emphasis supplied)

6

26. Included with the January 14, 2024 ChexSystems reinvestigation results was a copy of Plaintiff's file that again included reference to the suspected fraudulent yet erroneous BANA check activity.

27. To date, Plaintiff has never received the funds from the $6,663.38 check that her husband endorsed to her nor has BANA returned the check to her husband's union. Plaintiff's husband requested that the union reissue the check, but the union told him that it could not reissue the check because the original check was still outstanding and BANA never returned it to them. As such, BANA unlawfully retains Plaintiff's funds to this day.

28. As a direct and proximate cause of BANA's conduct in declaring Plaintiff as having engaged in fraud, reporting the erroneous BANA account to CRAs, and its failure to reinvestigate her disputes, Plaintiff has suffered economic and non-economic damages, including loss of employment opportunities. Plaintiff has been unable to complete job readiness training programs for employment within the banking sector and has had to opt out of FDIC placement opportunities because of the fraud notation on her consumer reports. Moreover, Plaintiff has suffered damage to her reputation, embarrassment, and emotional distress, and has been deprived of funds due to her. Plaintiff's BANA account remains closed to this day.

## V.    CLASS ACTION ALLEGATIONS

29. Plaintiff repeats the allegations in the foregoing paragraphs as though fully set forth herein.

30. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of the following classes:

> <u>Failure to Reinvestigate Class</u>: All persons with an address in the United States and its Territories: (1) for whom Defendant has a record of closing one or more deposit accounts due to an attempt to deposit a check that was issued to and/or endorsed by another individual; 2) for whom Defendant has no confirmed record

of fraud; 3) about whom Defendant furnished suspected fraudulent activity to one or more consumer reporting agencies; 4) concerning which suspected fraud activity Defendant received a notice of dispute from the consumer reporting agency during the period beginning two years prior to the filing of this matter and continuing until the date of the Court's class certification order; and 5) for whom Defendant failed to correct or delete the suspected fraudulent history within 30 days of receipt of the notice of dispute.

<u>Failure to Reopen Account and Return Payment Class</u>: All persons with an address in the United States and its Territories: (1) for whom Defendant has a record of closing one or more deposit accounts due to an attempt to deposit a check that was issued to and/or endorsed by another individual; 2) for whom Defendant has no confirmed record of fraud; 3) for which such persons disputed the closure of the account and/or Defendant's reporting of suspected fraud activity with BANA; and 4) for whom Defendant has not returned the check to the issuer or honored the deposit and/or reopened the account(s).

31. **Numerosity**. **Fed. R. Civ. P. 23(a)(1)**. The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendant follows standardized procedures with respect to reporting fraud information to CRAs, and thus regularly furnishes erroneous fraud warnings to CRAs despite having reason to know it is inaccurate.

32. **Existence and Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2)**. Common questions of law and fact exist as to all Class members, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others: whether Defendant's practices for reporting erroneous fraud warnings to CRAs, failure to investigate consumer disputes, failure to issue payment and/or return checks to issuers and failure to reopen accounts constituted unlawful practices under the FCRA and state laws.

33. **Typicality**. **Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory, actual and punitive damages that she seeks for absent Class members.

34. **Adequacy**. **Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the interests of the Class members she seeks to represent. She has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the Class members' interests.

35. **Predominance and Superiority**. **Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory, actual and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Class members, individually, to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI. CLAIMS *for* RELIEF

**FIRST CLAIM *for* RELIEF**
*On Behalf of Plaintiff and the Nationwide Class for Failure to Reinvestigate, Correct or Delete Disputed Information in Violation of FCRA § 1681s-2(b)*

36. Plaintiff repeats the allegations in the foregoing paragraphs as though fully set forth herein.

37. After it received notice from one or more CRAs of Plaintiff's and Class Members' disputes of erroneous fraud warnings that Defendant previously furnished to one or more CRAs, Defendant negligently or willfully failed to correct or delete the inaccurate late payment history, in violation of FCRA section 1681s2-(b).

38. Defendant is liable to Plaintiff and members of the Failure to Reinvestigate Class for all relief available pursuant to FCRA sections 1681n and 1681o.

**SECOND CLAIM *for* RELIEF**
*On Behalf of Plaintiff and the Class*
*for Defendant's Breach of Implied Contract*

39. Plaintiff realleges and incorporates the foregoing paragraphs as though set forth at length herein.

40. Each Plaintiff and Class Member had entered into an account agreement with the Defendant that requires it to honor certain terms and conditions, including the timely crediting of eligible, authorized and permitted deposits.

41. Each Plaintiff and Class Member performed all or substantially all of the material requirements that they were contractually obligated to, and fulfilled all conditions precedent to BANA's performance, including, among other things by contacting BANA to dispute its designation of certain check transaction as suspected fraud within a reasonable time period.

42. BANA breached it promises to Plaintiff and the Class by, among other things: a) failing to timely and reasonably investigate their disputes of the suspected fraud activity that BANA was reporting; b) maintaining the closed status of their accounts; c) failing to return the deposit checks to the issuer and/or credit their accounts.

43. Plaintiff and Class Members were harmed by BANA's conduct and have suffered actual damages in the amount of the monies that BANA has deprived them, as well as the interest

thereon and an amount equal to the difference in value of the banking services for which they provided valuable consideration and the banking services they received.

44. Plaintiff and Class Members were harmed by BANA's conduct and have suffered actual damages in the amount of the monies that BANA has deprived them, as well as the interest thereon and an amount equal to the difference in value of the banking services for which they provided valuable consideration and the banking services they received.

**THIRD CLAIM *for* RELIEF**
*On Behalf of Plaintiff and the Nationwide Class for*
*Unjust Enrichment*

45. Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

46. Plaintiff and the other members of the Class have an undisputed right to receive the monies that were provided to them in the form of deposit checks.

47. Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by freezing legitimate deposits that they were entitled to receive, closing their accounts, treating legitimate banking activities as fraud and failing to reopen their accounts and either return the deposit checks at issue or credit Plaintiff's and Class Members' account after receiving their disputes. All the while, Defendant has unlawfully retained the monies owed to Plaintiff and the Class Members.

48. Defendant's interference with the rights and services for which Plaintiff and members of the Class are entitled damaged Plaintiff and members of the Class.

**VII.   JURY TRIAL DEMAND**

49. Plaintiff demands a jury trial on all claims.

## VIII. **PRAYER *for* RELIEF**

WHEREFORE, Plaintiff asks for judgment against Defendant; for class certification as pleaded; for statutory and punitive damages for herself and each member of the Class described above; for actual or statutory and punitive damages for her individual claim; for equitable and injunctive relief; and for attorneys' fees and costs and such other specific or general relief the Court finds just and appropriate.

DATED: April 25, 2024

Respectfully submitted,

SHANIQUE BEST, by her attorneys,

Kevin C. Mallon
FRANCIS MAILMAN SOUMILAS, P.C.
One Liberty Plaza, Suite 2301
New York, NY 10006
T: (646) 759-3663
kmallon@consumerlawfirm.com

James A. Francis*
John Soumilas*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215-735-8600
F: 215-940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

        Michael C. Pope
        Shomari Ward
        Simratpal Kaur
        YOUTH REPRESENT
        11 Park Place, Suite 1512
        New York, New York 10007
        Telephone: (646) 759-8080
        mpope@youthrepresent.org
        sward@youthrepresent.org
        skaur@youthrepresent.org

        *Petition to appear *pro hac vice* forthcoming